# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2024-KA-01270-SCT

### *ELZA CHARLES SANDERS a/k/a ELZA SANDERS*

### *v.*

### *STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/15/2024 |
| TRIAL JUDGE: | HON. TONI DEMETRESSE TERRETT |
| TRIAL COURT ATTORNEYS: | EUGENE A. PERRIER |
| | BRANAN PATRICK SOUTHERLAND |
| | LIEM ANOVA WALKER |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | AMBER LAUREN STEWART |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ASHLEY LAUREN SULSER |
| DISTRICT ATTORNEY: | RICHARD EARL SMITH, JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/23/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE COLEMAN, P.J., GRIFFIS AND SULLIVAN, JJ.**

**SULLIVAN, JUSTICE, FOR THE COURT:**

¶1.     While being interviewed regarding another incident of inappropriate touching, Rachel[1] informed the local Children's Advocacy Center (CAC) that Elza Charles Sanders had molested and raped her while her family had been living with Sanders.

¶2.     As a result, Sanders was indicted for one count of sexual battery under Mississippi

---

[1]To protect the child victim's identity, we have used a fictitious name. Rachel was born March 19, 2007. At the time of the interview, Rachel was fourteen years old.

Code Section 97-3-95(1)(d) (Rev. 2020) and one count of molestation under Mississippi Code Section 97-5-23(1) (Rev. 2020). After a trial, Sanders was convicted on each count. For the sexual-battery conviction, Sanders was sentenced to life in prison. For the molestation conviction, Sanders was sentenced to fifteen years in prison. The trial court ordered the sentences to run consecutively.

¶3. On appeal, Sanders argues that his conviction should be reversed because: (1) "[t]he State committed a discovery violation by failing to disclose Charlene Barnett as an expert[,]" which prejudiced his defense, and (2) "[t]he jury's verdict is against the weight of the evidence." He also asserts several arguments in his *pro se* brief:

(1) the trial court erred by failing to hold a competency hearing;

(2) he was given an illegal and disproportionate sentence;

(3) he received ineffective assistance of counsel;

(4) the trial court committed plain error by denying Sanders's motion for a directed verdict; and

(5) his convictions should be reversed based on the cumulative-error doctrine.

¶4. After reviewing the record, this Court finds that Sanders did not properly object and preserve his discovery argument for appeal purposes. We find also that when viewing the evidence in the light most favorable to the verdict, the jury's verdict was not against the overwhelming weight of the evidence. As for Sanders's *pro se* arguments, the Court finds that his arguments are either waived or without merit. Therefore, we affirm Sanders's convictions.

2

## FACTS

¶5.    On December 13, 2021, Charlene Barnett interviewed Rachel at the local CAC. Initially, the interview concerned an incident of inappropriate touching by her mother's recent boyfriend.[2] During the interview, Rachel was asked if she had been touched inappropriately in the past, to which she responded in the affirmative. Rachel informed Barnett that Sanders had sexually abused her when she was twelve years old. Rachel's interview with Barnett had been recorded and was played for the jury.

¶6.    Rachel testified that Sanders and her mother began dating when she was "[p]robably like [seven years old]." At some point during the relationship, Rachel, her mother, and Rachel's younger siblings moved into Sanders's home.[3] According to Rachel, one night while her mother was away, Sanders dragged her into his room, touched her breasts, and raped her. After the assault was over, Rachel went to her room, which she shared with her other siblings and cried herself to sleep. Rachel testified that she did not tell her family or anyone else about the incident until years later. She identified the only two people to whom she had disclosed this event:  (1) a former boyfriend and (2) Barnett during the interview at the CAC.

¶7.    After the interview concluded, law enforcement was notified. Investigator Stacy Rollison with the Warren County Sheriff's Office was assigned to the case. Rollison was

---

[2]Rachel's mother passed away in September 2021.

[3]There was conflicting testimony regarding the exact year that Rachel and her family began living with Sanders. Rachel testified that it was in 2014. Her sister testified that it was in 2015. Sanders testified that it was in 2013. Rachel would have been under the age of fourteen in any of these years.

"able to pull up [Sanders's] name in an area that was consistent with the area [Rachel] said she had been living[.]" Rachel was able to identify Sanders from a photograph that Rollins had presented to her.

¶8.     Barnett testified at trial on behalf of the State. Before the trial started, a discussion occurred regarding whether Barnett would offer an expert opinion. Sanders argued that he had not been notified that Barnett was going to testify as an expert. When asked if the State planned to offer Barnett as an expert, the State requested permission from the trial court to settle the matter outside of the court's presence with defense counsel. Specifically, the State said that "if we can't resolve it then we can bring it back to the [c]ourt's attention." Sanders agreed to this resolution. Ultimately, Sanders accepted Barnett as an expert in the area of child forensic interviewing.

¶9.     Barnett explained how she went about conducting the interview with Rachel. Barnett agreed that it was common that children did not want to discuss the abuse. When asked if mistaking dates and times was a common occurrence in these types of cases, Barnett agreed. Barnett explained that "timing is one thing that is not always the most accurate. But it doesn't negate the fact that what they are telling us, whether it did or did not happen." She continued, "we ask more specific questions about the time of year or if there are things going on around that time frame that they recall in their memory because not everyone knows specific dates." She used Rachel's reference to the location of Sanders's house as an example.

¶10.    As the State attempted to ask Barnett whether she was "able to make a determination of whether [Rachel] is someone who is consistent with someone having been abused

4

sexually[,]" Sanders objected. Defense counsel argued that he had "never been provided with this opinion" and that "[t]here [was] nothing in [the report] that expresses an expert opinion." In response, the State stated that Sanders had been in possession of a copy of the "report of an expert forensic interview" for a long time. After going back and forth, the State ultimately withdrew the question.

¶11. Dr. Scott Benton, an expert in pediatric forensic medicine, testified that it was not uncommon for a young child to wait a few years before telling someone that she had been assaulted. He testified also that "there [was] nothing objectively to say whether or not [the] abuse took place." But he stated that a lack of physical evidence was not uncommon. Dr. Benton explained that the lack of physical evidence in Rachel's case could be due to her young age at the time of the abuse. Because the abuse occurred when Rachel was either eight or twelve, her body "is constant[ly] repair[ing]" and "the longer the time the longer the ability to repair."

¶12. Sanders testified in his own defense. Sanders was born on January 2, 1955, and was sixty-nine years old at the time of his trial. While Sanders denied sexually assaulting and molesting Rachel, he admitted that Rachel and her family had lived with him for a period of time. He stated that Rachel had lived with him from 2013 to 2016. Sanders agreed that during that time period, Rachel would have been six years old at the time she moved in and nine years old at the time she moved out. Sanders stated that he did not have any contact with Rachel after she moved out of his house.

¶13. On September 26, 2024, the jury found Sanders guilty. He was sentenced to life in

prison for the sexual-battery conviction and to fifteen years in prison for the molestation conviction, to run consecutively.

¶14. Sanders filed a "Motion for a Judgment Not Withstanding [sic] the Verdict, or in the alternative, a New Trial," on the basis that the verdict was against the overwhelming weight of the evidence. The trial court denied Sanders's post-trial motion. Sanders filed a notice of appeal on November 12, 2024.

## DISCUSSION

### I.     Discovery Violation

¶15. Sanders argues that "[t]he State committed a discovery violation by failing to disclose Charlene Barnett as an expert witness" and that he "was not afforded an opportunity to interview Barnett in accordance to the *Box*[4] procedure after his objection to her testimony." Specifically, he asserts that the trial court violated Mississippi Rule of Criminal Procedure 17.9(b)(1) by "fail[ing] to grant the defense a reasonable opportunity to interview [Barnett] once the defense attorney disclosed that he was previously unaware that the witness would testify at trial." He states that "[t]he record shows that the trial court did not offer defense counsel an opportunity to interview Barnett, despite [counsel's] objection." As a result, he was prejudiced by Barnett's testimony.

¶16. The State argues that this argument is waived for three reasons:  (1) "Sanders did not object to Barnett testifying as an expert witness in child abuse interviewing[;]" (2) "Sanders never asked for a continuance after he learned about Barnett's expert opinion—either during

---

[4]*Box v. State*, 437 So. 2d 19, 22-26 (Miss. 1983).

6

the pretrial discussion or when the objectionable question was asked [at] trial[;]" (3) "the jury never heard the answer to the challenged question." We agree.

¶17. While Sanders objected to Barnett's testifying as an expert witness at the pretrial stage, he did not obtain a ruling from the trial judge. Rather, Sanders agreed with the State's recommendation to consider the matter outside the presence of the trial court. During the trial, Sanders did not renew his objection to Barnett's testifying as an expert witness. Instead, he accepted Barnett as an expert witness in child forensic interviewing.

¶18. Sanders takes issue with the trial court's failure to give him "an opportunity to interview the State's expert witness after the late disclosure." But this Court has recognized that in these situations, the defendant must request a continuance, and failure to do so waives the issue. *McCullough v. State*, 750 So. 2d 1212, 1217 (Miss. 1999). Despite having several opportunities to do so, it is clear from the record that Sanders never asked for a continuance. "Under *McCullough*, [Sanders] has waived this issue for appellate review by failing to seek a continuance." *Dancy v. State*, 287 So. 3d 931, 939 (Miss. 2020).

¶19. While Sanders recognizes that the State withdrew its question regarding Barnett's opinion as to whether Rachel's behavior was consistent with someone having been sexually abused, he asserts that "Barnett's prior testimony on the timing of disclosure and Rachel's actions during the interview" caused unfair prejudice. Sanders did not object to Barnett's testimony regarding Rachel's actions during the interview. But he did object to the State's line of questioning regarding whether Barnett thought it was common for children to mistake dates. In response, the trial court determined that the State could do so as long as the State

7

"can do it without referring to anything previously not presented." Also, Dr. Benton testified about a child's hesitancy to report, without objection from Sanders. This Court cannot say that the trial court erred.

## II. Weight of the Evidence

¶20. Sanders challenges the weight of the evidence. He asserts that "[t]he jury's verdict was against the overwhelming weight of the evidence because Rachel's story contains multiple contradictions, there is no reliable timeline of events, and there are no corroborating witnesses to support her version of the facts."

¶21. "In determining whether a jury verdict is against the overwhelming weight of the evidence, 'this Court will only disturb a jury verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'" *Hogan v. State*, 48 So. 3d 512, 514 (Miss. 2010) (quoting *Boyd v. State*, 977 So. 2d 329, 336 (Miss. 2008)). Additionally, "we must also view the evidence in the light most favorable to the verdict." *Burden v. State*, 347 So. 3d 174, 178 (Miss. 2022) (citing *Little v. State*, 233 So. 3d 288, 289 (Miss. 2017)).

¶22. This Court finds that the verdict is not against the overwhelming weight of the evidence. First, we have held that "[t]he unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence[.]" *Mayfield v. State*, 422 So. 3d 956, 960 (Miss. 2025) (alterations in original) (internal quotation marks omitted) (quoting *Wilkins v. State*, 1 So. 3d 850, 853 (Miss. 2008)). As pointed out by the State, while there were "small

8

inconsistencies between Rachel's CAC interview and [her] trial testimony," the material facts of Rachel's story have never changed. She has consistently maintained that Sanders touched her breasts and raped her.

¶23.    Regarding the discrepancy about when the assault occurred, a similar argument was presented in *Bateman v. State*, 125 So. 3d 616 (Miss. 2013). In *Bateman*, the defendant argued "that the State failed to prove that [the] touching occurred during the time frame in the indictment." *Id.* at 624. The Court determined that "[t]he exact date of this touching was not an essential element of the State's proof." *Id.* The Court recognized that we have held previously "that a specific date is not required in a child-abuse case as long as the defendant is 'fully and fairly advised of the charge against him.'" *Id.* (quoting *Morris v. State*, 595 So. 2d 840, 842 (Miss. 1991)); *see Ross v. State*, 288 So. 3d 317, 323 (Miss. 2020) ("An exact date was not an essential element of the State's proof." (citing *Bateman*, 125 So. 3d at 624)); *see also Bradshaw v. State*, 371 So. 3d 822, 830 (Miss. Ct. App. 2023) ("[I]t should be noted that in regard to sexual battery cases 'the date "of the offense is not an essential element of the offense charged in the indictment."'" (quoting *Faulkner v. State*, 109 So. 3d 142, 149 (Miss. Ct. App. 2013))). This tracks with the language of the charged statute, which requires that the State prove that Rachel was under the age of fourteen when this incident occurred. *See* § 97-3-95(1)(d). This Court finds that any argument regarding a discrepancy in the timeline is without merit.

### III.    *Pro Se* Arguments

¶24.    After reviewing each issue raised in Sanders's *pro se* brief, this Court finds that the

9

issue is either waived or without merit. This Court finds that his competency-hearing argument is waived because he is raising it for the first time on appeal. *See **Fowler v. White***, 85 So. 3d 287, 293 (Miss. 2012) ("This Court has long held that it will not consider matters raised for the first time on appeal." (internal quotation marks omitted) (quoting ***Triplett v. Mayor & Bd. of Aldermen of Vicksburg***, 758 So. 2d 399, 401 (Miss. 2000))). The argument also lacks merit because he failed to present any evidence that would have signaled to the trial court that he lacked an understanding of the proceeding. *See **Richardson v. State***, 722 So. 2d 481, 486 (Miss. 1998). Likewise, we find that his illegal-and-disproportionate-sentence argument is without merit. Despite referencing the wrong subsection in his sentencing order, the trial court issued a sentence that was permitted by the statute, *i.e.*, Section 97-3-95(1)(d). This scrivener's error does not make Sanders's sentence illegal or disproportionate. Regarding his claims of ineffective assistance of counsel, this Court declines to address as this argument is better reserved for post-conviction-relief proceedings. *See **Pace v. State***, 242 So. 3d 107, 118 (Miss. 2018) (quoting ***Wilcher v. State***, 863 So. 2d 776, 825 (Miss. 2003)).

¶25.    Sanders argues that the trial court erred by denying his motion for a directed verdict.[5] Sanders alleges that there was no physical evidence and that Rachel's inconsistent testimony

---

[5]"A directed verdict, judgment notwithstanding a verdict and a request for peremptory instruction all challenge the legal sufficiency of the evidence presented at trial." ***Woods v. State***, 242 So. 3d 47, 54 (Miss. 2018) (internal quotation marks omitted) (quoting ***Easter v. State***, 878 So. 2d 10, 21 (Miss. 2004)). "When reviewing the sufficiency of the evidence, this Court views the evidence in the light most favorable to the State and determines if any rationale juror could have found the elements of the charged crimes beyond a reasonable doubt." ***Bernard v. State***, 288 So. 3d 301, 305-06 (Miss. 2019) (citing ***Martin v. State***, 214 So. 3d 217, 222 (Miss. 2017)).

is the only evidence against him. As stated above, this Court has held that "[t]he unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence[.]" *Mayfield*, 422 So. 3d at 960 (alterations in original) (internal quotation marks omitted) (quoting *Wilkins*, 1 So. 3d at 853). No evidence discredited or contradicted that Sanders touched Rachel's breasts and raped her. Likewise, "this Court has found that the absence of physical evidence alone will not suffice to overturn a conviction." *Id.* (citing *Blanchard v. State*, 55 So. 3d 1074, 1079 (Miss. 2011)).

¶26. Again, Sanders's argument that the inconsistency regarding when the incident occurred is without merit. The State was not required to prove that the incident occurred during the time frame indicated on the indictment. Rather, the State was required to prove that Rachel was under the age of fourteen when the incident occurred. Any rational juror could have found that Rachel would have been under the age of fourteen during each time period mentioned at trial.

¶27. Viewing the evidence in the light most favorable to the State, it is likely that any rational juror would have determined that the State proved that Sanders molested and sexually assaulted Rachel while she was under the age of fourteen.

¶28. Sanders's last *pro se* argument is that his convictions should be reversed due to the cumulative-error doctrine. We find that this doctrine is inapplicable in this case. *See Cole v. State*, 412 So. 3d 1144, 1152 (Miss. 2025) ("Where there are no individual errors, . . . there can be no reversible cumulative error." (citing *Harris v. State*, 970 So. 2d 151, 157 (Miss. 2007))).

## CONCLUSION

¶29. After careful consideration, this Court finds that Sanders's arguments are either waived or lack merit. As a result, we affirm Sanders's convictions.

¶30. **AFFIRMED.**

**RANDOLPH, C.J., KING AND COLEMAN, P.JJ., ISHEE, GRIFFIS AND BRANNING, JJ., CONCUR.**